UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMERICAN BOARD OF ANESTHESIOLOGY, INC., | : : : | CIVIL ACTION NO. 303CV974 (CFD) |
| Plaintiff, | : : | |
| v. | : : | |
| JOHN STEPHEN NAULTY, M.D., | : : | |
| Defendant. | : | DECEMBER 15, 2003 |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The plaintiff, the American Board of Anesthesiology (the "ABA" or the "Board"), hereby submits this Memorandum of Law in Opposition to the Motion to Dismiss filed by the defendant, John Stephen Naulty, M.D. For the reasons stated herein, defendant's motion should be denied in its entirety.

I. BACKGROUND

By Complaint filed June 2, 2003, the ABA commenced this action against defendant, seeking declaratory and injunctive relief and damages based on the trademark laws of the United States. The ABA's claims are based on defendant's unlawful use of the ABA's federally registered certification mark, which use constitutes unfair competition, false advertising and false designation of origin in violation of 15 U.S.C. § 1125(a), and constitutes a violation of the federal anti-dilution statute, 15 U.S.C. § 1125(c).

As stated in its Complaint, the ABA is known in the medical community as the source of professional certification for physicians practicing in the field of anesthesiology.

(Complaint at ¶ 8.) The ABA provides certification for general anesthesiology as well as certification in the subspecialties of (1) critical care and (2) pain medicine.[1] (Id. at ¶ 9.) Once a candidate for certification in anesthesiology fulfills the requirements for certification as set forth by the ABA, that candidate is certified as a Diplomate. (Id. at ¶¶ 12-13.) Upon certification, the ABA provides the successful candidate with a numbered certificate that displays, among other things, certification marks belonging to the ABA, including the mark THE AMERICAN BOARD OF ANESTHESIOLOGY®. (Id.) Certification by the ABA carries with it attendant rights and honors, including the rights to serve as an expert in matters relating to anesthesiology, deliberate with others and provide advice and defend opinions in all aspects of the specialty. (Id. at ¶ 10.) The ABA also provides a subspecialty certification in pain medicine to candidates who have fulfilled all of the requirements for subspecialty certification. (Id. at ¶¶ 19-20.)

Defendant is a medical doctor who has been certified by the ABA in anesthesiology. (Id. at ¶¶ 5, 23-24.) Defendant is not now and has never been certified by the ABA in the subspecialty of pain medicine. (Id. at ¶¶ 25-26.) Despite his lack of certification in pain medicine, defendant submitted to both Yale Medical Group and the Yale University School of Medicine, his employer, a copy of a letter that purports to represent that he is certified by the ABA in the subspecialty of pain medicine. (Id. at ¶ 27.) That letter is dated November 8, 1993, and purportedly was addressed to defendant from "William D. Owens, M.D. Secretary - Treasurer." (Id. at ¶ 28.) That letter bears the name "The American Board of

---

[1] The ABA previously referred to its certification in the subspecialty of pain medicine as a Certificate of Added Qualifications in Pain Management. (Complaint at ¶ 28.) For ease of reference in this Memorandum, the ABA will refer to its certification in this subspecialty by its present designation, certification in the subspecialty of pain medicine.

Anesthesiology, Inc." and states that defendant had successfully satisfied the requirements for certification and that the Board therefore was awarding defendant its Certificate of Added Qualifications in Pain Management. (Id.) The letter that defendant provided to Yale Medical Group and Yale University School of Medicine contains false statements and is a counterfeit reproduction of an actual ABA letter used to inform subspecialty certification candidates of their certification in the subspecialty of pain medicine. (Id. at ¶ 29.)

On November 21, 2003, defendant filed a Motion to Dismiss the ABA's Complaint. Defendant moves first pursuant to Rule 12(b)(1), arguing that this Court lacks subject-matter jurisdiction over the ABA's claims because defendant has asserted in an affidavit filed with the motion that he does not intend "to engage in any unauthorized use of the registered certification mark of The American Board of Anesthesiology, Inc." ( Affidavit of John Stephen Naulty, M.D. at ¶ 12.) Defendant's bare assertion that he will cease any future infringing conduct is insufficient, however, to deprive this Court of subject-matter jurisdiction over the action. Defendant further moves to dismiss pursuant to Rule 12(b)(6), claiming that both Counts One and Two of the ABA's Verified Complaint fail to state a cause of action upon which relief can be granted. As will be demonstrated below, these claims are, likewise, without merit.

## II.   STANDARD OF REVIEW

In analyzing a motion to dismiss, the Court must accept all well pleaded factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. Boateng v. Apple Health Care, Inc., 156 F. Supp. 2d 247, 250 (D. Conn. 2001); Sicignano v. United States, 127 F. Supp. 2d 325, 328 (D. Conn. 2001) (citing Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)). In deciding such a motion brought

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court is not necessarily confined to the allegations of the Complaint, however, and "'may [also] resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.'" Sicignano, 127 F. Supp. 2d at 328 (alteration in original) (quoting Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998)). In the event that the Court refers to evidence outside of the pleadings, "the standard used . . . is akin to that for summary judgment under Fed. R. Civ. P. 56(e)." Sicignano, 127 F. Supp. 2d at 328.

In deciding a motion to dismiss brought pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. . . . The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Waring v. Carrier Corp., No. 301CV1822(JBA), 2002 U.S. Dist. LEXIS 17650, at *5-*6 (D. Conn. Aug. 21, 2002) (citations omitted) (internal quotation marks omitted); Courtenay Communications Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003). Moreover, "[a] complaint need only include a short and plain statement of the claim showing that the pleader is entitled to relief, . . . and must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests, . . . . This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Waring, 2002 U.S. Dist. LEXIS 17650, at *8-*9 (citations omitted) (internal quotation marks omitted); Courtenay Communications Corp., 334 F.3d at 213.

Applying these standards to defendant's arguments under Rule 12(b)(1) and 12(b)(6) respectively, this Court should deny defendant's motion in its entirety

## III.  LEGAL ARGUMENT

### A.  This Court Properly Has Subject-Matter Jurisdiction Over This Action.

Defendant claims that, because defendant has indicated that he does not intend to engage in infringing conduct in the future, the ABA's claim for permanent injunctive relief is moot.[2] Defendant further claims that the ABA is not entitled to damages as a matter of law and, therefore, the ABA's claim for damages also is moot. Defendant's claims are wholly without merit.

"The mootness doctrine, which is mandated by the 'case or controversy' requirements in Article III of the United States Constitution, requires that federal courts may not adjudicate matters that no longer present an actual dispute between the parties. . . . Thus 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome,' . . . a case is moot and the federal court is divested of jurisdiction over it . . . . For example, when 'it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation,' the issue is moot. . . . 'The central question . . . is constant -- whether decision of a once living dispute continues to be justified by a

---

[2] By its Complaint, the ABA seeks permanent injunctive relief. On June 2, 2003, the ABA filed its Application for Preliminary Injunction, but that Application is not the subject of defendant's November 21, 2003 Motion to Dismiss.

sufficient prospect that the decision will have an impact on the parties.'" Catanzo v. Wilson, 277 F.3d 99, 107 (2d Cir. 2001) (alteration in original) (citations omitted).

### 1. The ABA's Claim for Injunctive Relief Is Not Moot.

"A defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice. . . . A suit will be rendered moot by a defendant's voluntary change in policy only if it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur. . . . The party asserting mootness has a heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." Cartier, Inc. v. Four Stars Jewelry Creations, Inc., No. 01CIV11295, 2003 U.S. Dist. LEXIS 7844, at *8-*9 (S.D.N.Y. May 8, 2003) (citations and internal quotation marks omitted). Moreover, "[a] bare promise by a party in the course of litigation to discontinue past or ongoing misconduct does not justify denial of injunctive relief, since such unilateral action hardly suffices to ensure that the party will not, in the future, reverse course and resume its challenged activities. . . . Indeed, if [the defendant] sincerely intends not to infringe, the injunction harms [it] little; if [it does], it gives [plaintiff] substantial protection of its trademark[]" Id. at *17-*18 (first and last alterations added) (citations and internal quotation marks omitted); see also Am. Angus Ass'n v. Sysco Corp., 829 F. Supp. 807, 817 (W.D.N.C. 1992) (same).

Defendant's assertion that he does not intend to infringe the ABA's mark in the future is nothing more than a "bare promise" to discontinue past misconduct and is not sufficient to deprive this Court of subject-matter jurisdiction. Defendant's past conduct of counterfeiting an ABA certification notification letter and supplying it to Yale Medical Group and Yale University School of Medicine - evidences intentional, willful and deliberate infringement,

-6-

seriously undermining the credibility of any promise by defendant to refrain from engaging in such behavior in the future. Indeed, if defendant intends to keep his promise not to infringe, an injunction could hardly harm his interests, whereas the ABA's property interests will be harmed severely if defendant resumes such activity in the absence of an injunction. Moreover, the ABA's claim for relief is not limited to cessation of the use of its mark. The ABA's Complaint seeks declaratory and injunctive relief as well as damages. Thus even if this Court determined that the ABA's claim for injunctive relief was moot, the Complaint should not be dismissed because there is still a live controversy as to the ABA's claims for declaratory relief, injunctive relief other than that seeking to enjoin use, and damages. Univ. of Texas v. Camenisch, 451 U.S. 390, 393-94, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981); see also I. Appel Corp. v. Munsingwear, 646 F. Supp. 685, 687 (S.D.N.Y. 1986) (concluding that "[p]laintiff's trademark claim also remains a live case or controversy because plaintiff has asserted a claim for damages.").[3]

        2.     <u>The ABA's Claim for Damages Is Not Moot.</u>

Defendant also claims that the ABA is not entitled to damages as a matter of law, thus rendering the ABA's claim for damages moot. Defendant attempts to support this statement

---

[3] Defendant relies on <u>Am. Bd. Of Psychiatry & Neurology, Inc. v. Johnson – Powell</u>, 129 F.3d 1 (1st Cir. 1997) to support his assertion that the ABA's claim for injunctive relief has been rendered moot by defendant's statement that he does not intend to infringe the ABA's mark in the future. Defendant, however, mischaracterizes the holding of that case. In <u>Johnson – Powell</u>, the United States Court of Appeals for the First Circuit reluctantly affirmed the district court's denial of a motion for a *preliminary* injunction, stating that "[w]hile the case is close, we cannot say that the district court acted beyond its discretion." <u>Id.</u> at 2. At no time did either the district court or the First Circuit state that the plaintiff's claim was moot. Rather, the First Circuit specifically based its decision on the fact that "[t]he district court retains jurisdiction over this matter pending final determination of the action brought by ABPN. Dr. Johnson-Powell and her attorneys are unquestionably aware that any violation during that period would constitute a serious breach of faith with the court and would erode any hopes defendant may continue to have for a successful outcome. ABPN, moreover, will still be able to request final injunctive relief." <u>Id.</u> at 6. This case thus supports *the ABA's* contention that its claim for injunctive relief remains a live controversy notwithstanding defendant's promise to refrain from infringing conduct.

-7-

by arguing that the ABA would not succeed on the merits of its claim for damages. This argument is fatally flawed.

It is black letter law that an examination of the merits of a claim is not properly before this Court on a motion to dismiss brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Dismissal pursuant to 12(b)(1) raises the issue of this Court's subject-matter jurisdiction. "Jurisdiction to resolve cases on the merits requires . . . authority over the category of claim in suit (subject-matter jurisdiction) . . . . In <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 140 L. Ed. 2d 210, 118 S. Ct. 1003 (1998), [the United States Supreme Court] adhered to the rule that a federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits. . . . Recalling 'a long and venerable line of [Supreme Court] cases,' . . . <u>Steel Co.</u> reiterated: 'The requirement that jurisdiction be established as a threshold matter . . . is "inflexible and without exception,"' . . . for jurisdiction is power to declare the law,' and 'without jurisdiction the court cannot proceed at all in any cause . . . .'" <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 577, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999). Thus, "jurisdiction goes . . . to the issue of whether or not the court may even entertain the case on its docket. Any ruling on the merits of the [defendant's] claims necessarily involves an exercise of jurisdiction by this court." <u>Pouliot v. Paul Arpin Van Lines, Inc.</u>, No. 302CV1302(DJS), 2003 U.S. Dist. LEXIS 21596, at *4 n.1 (D. Conn. Nov. 26, 2003).

Defendant's assertion that the ABA's claim for damages is moot is improperly predicated on an examination of the merits of the ABA's claim. As defendant himself notes, "[m]onetary relief is available to a *successful* plaintiff under the Lanham Act in the form of damages and an accounting of defendant's profits." (Def.'s Mem. at 8.) An examination of

-8-

the merits of the ABA's claim for damages, however, is not properly before this Court on a motion to dismiss for lack of subject-matter jurisdiction. The measure of damages to which the ABA will be entitled is a question of fact for this Court to determine after a ruling on the merits of the ABA's case. Regardless of the fact that defendant has couched this motion as being brought pursuant to Rule 12(b)(1), he is attempting to argue issues properly brought in a motion for summary judgment. Moreover, defendant's claim that he will prevail on the merits, while not surprising, is not an adequate substitute for a *ruling* on the merits. Absent a showing that this court lacks subject-matter jurisdiction, the ABA is entitled to a ruling on the merits of its claim for damages. I. Appel Corp., 646 F. Supp. at 687 ("Defendant conclusorily asserts that this claim [for damages] is 'frivolous' [and therefore moot]; but if defendant so believes, it may, if so advised, move for *summary judgment*. Until judgment is entered on that claim, *by a Rule 56 motion or through trial on the merits*, it remains a live issue.") (emphasis added). Accordingly, defendant's Motion to Dismiss for lack of subject-matter jurisdiction should be denied.

### B. The ABA's Complaint Alleges Facts Sufficient to Satisfy the "Use In Commerce" Requirement of the Lanham Act.

The ABA has alleged facts sufficient to satisfy the "use in commerce" jurisdictional requirement of the Lanham Act.[4] "Section 1125 [of the Lanham Act], the federal unfair

---

[4] "Use in commerce" is not an element of a § 1125(a) cause of action such that it must be alleged in order to state a claim upon which relief can be granted. Gucci Am., Inc. v. Duty Free Apparel, Ltd., No. 02CIV1298(VM), 2003 U.S. Dist. LEXIS 17624, at *9-*10 (S.D.N.Y. Oct. 6, 2003) (stating that in order to establish a prima facie case under § 1125(a), a plaintiff must show: "(1) that it has a valid mark that is entitled to protection under the [Lanham] Act and (2) that Defendant's actions are likely to cause confusion as to the origin of the mark"). Rather, a "use in commerce" allegation serves to establish, for subject-jurisdictional purposes, that the action arises under the trademark laws of the United States. Franchised Stores of N.Y., Inc. v. Winter, 394 F.2d 664, 669 (2d Cir. 1968); Schroeder v. Lotito, 577 F. Supp. 708, 714-15 (D.R.I. 1983). Defendant claims that the ABA has failed to allege facts sufficient to satisfy the "use in commerce" requirement of the Lanham Act. On that basis, defendant moves to dismiss Counts One and Two for failing to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). This issue would properly be the subject of a

competition provision, imposes civil liability on any person who uses a false designation of origin, or any false description or representation in connection with goods in commerce. The Lanham Act further provides that 'the word "commerce" means all commerce which may lawfully be regulated by Congress.' . . . [T]hus the scope of the Act is equal to the sweep of congressional power under the Commerce Clause, Article I, § 8, clause 3 of the Constitution. It is well settled that a plaintiff may satisfy the jurisdictional requirement of use in commerce by demonstrating either: (1) that the infringing mark, or the false designation or misrepresentation, was used in connection with goods in commerce, or (ii) that the defendants' use, while wholly intrastate, tended to have a substantial effect on plaintiffs' interstate business. . . . Moreover, 'an adverse effect on the sales or goodwill of one whose trademark is used in interstate commerce is a sufficiently substantial effect on interstate commerce . . . to invoke the protection of the Lanham Act." Schroeder v. Lotito, 577 F. Supp. 708, 714 (D.R.I. 1983), aff'd, 747 F.2d 801 (1st Cir. A984) (citations omitted); Coca-Cola Co. v. Stewart, 621 F.2d 287, 290-91 (8th Cir. 1980). "A substantial effect on interstate commerce is present when the trademark owner's reputation and good will, built up by use of the mark in interstate commerce, are adversely affected by an intrastate infringement." Franchised Stores of N.Y., Inc. v. Winter, 394 F.2d 664, 669 (2d Cir. 1968).[5]

---

motion brought pursuant to Rule 12(b)(1) not Rule 12(b)(6). Regardless of the Rule under which the motion is brought, however, the ABA has alleged facts sufficient to satisfy the "use in commerce" requirement of the Lanham Act.

[5] Indeed, the cases relied upon by defendant in his Motion to Dismiss are not inconsistent. The courts in Goldberg v. Bell Atlantic, 2000 U.S. Dist. LEXIS 14250 (S.D.N.Y. Sept. 29, 2000), Iding v. Anaston, 266 F. Supp. 1015 (N.D. Ill. 1967), and Einhorn v. Yafee Prescott Architecture & Eng'g, P.C. v. Turpin, No. 94CV830, 1995 U.S. Dist. LEXIS 20546 (N.D.N.Y. May 12, 1995) on the allegations in these cases, there was no substantial effect on interstate commerce. The court in Licata & Co., Inc. v. Goldberg, 812 F. Supp. 403 (S.D.N.Y. 1993) questioned the validity of the conclusion that an effect on interstate commerce would fulfill the interstate commerce requirement. That court did not, however, dismiss the plaintiff's claim, which was based

In the present case, the ABA has alleged that: (1) it uses its mark in interstate commerce (Complaint at ¶ 16); (2) defendant has infringed the ABA's mark (id. at ¶ 30); and (3) defendant's actions have caused damage to the ABA's reputation and goodwill (id. at ¶¶ 37-39, 43-44). These facts are sufficient as a matter of law to satisfy the "use in commerce" requirement of the Lanham Act for purposes of a Rule 12(b)(6) determination. See Franchised Stores of N.Y., Inc., 394 F.2d at 669. To conclude otherwise "would imply that local infringers could pirate a national mark with virtual impunity from federal restrictions, inflicting 'death by a thousand cuts' upon the trademark holder." Coca-Cola Co., 621 F.2d at 292. Accordingly, defendant's Motion to Dismiss Counts One and Two should be denied.

C.  **The ABA Alleges Facts Sufficient to Support a Claim for Unfair Competition, False Advertising and False Designation of Origin.**

Count One of the Complaint properly alleges a cause of action for unfair competition, false advertising and false designation of origin in violation of 15 U.S.C. § 1125(a). In order to make out a prima facie case under § 1125(a), the ABA must show: "(1) that it has a valid mark that is entitled to protection under the [Lanham] Act and (2) that Defendant's actions are likely to cause confusion as to the origin of the mark." Gucci Am., Inc. v. Duty Free Apparel, Ltd., No. 02CIV1298(VM), 2003 U.S. Dist. LEXIS 17624, at *9-*10 (S.D.N.Y. Oct. 6, 2003); Caterpillar Inc. v. Walt Disney Co., No. 03-1334, 2003 U.S. Dist. LEXIS 18618, at *12 (C.D. Ill. Oct. 20, 2003). Defendant does not contest the validity of the

---

purely on intrastate activity, even though that court noted that the use in commerce requirement is a prerequisite to the court's subject-matter jurisdiction. The court in Playtex Products, Inc. v. Georgia Pacific Inc., No. 02CIV7848(HB), 2003 U.S. Dist. LEXIS 13981, at *25 (S.D.N.Y. Aug. 12, 2003) stated that "use in commerce" is an essential element of a dilution claim under § 1125(c). That a plaintiff must allege "use in commerce" is, however, all that the court said. Defendant offers no authority for the proposition that the test for satisfying the "use in commerce" requirement of § 1125(c) is any different than that necessary to satisfy the other sections of the Lanham Act. Finally, the court in Cognotec Servs. Ltd. v. Morgan Guaranty Trust Co. of N.Y., 862 F. Supp. 45 (S.D.N.Y. 1994) concluded that a company's internal development and use of a computer program failed to satisfy the "use in commerce" requirement.

ABA's mark. The sole issue thus is whether the ABA has alleged facts sufficient to show a likelihood of confusion.[6] Gucci Am., Inc., 2003 U.S. Dist. LEXIS 17624, at *9-*10; Caterpillar, Inc., 2003 U.S. Dist. LEXIS 18618, at *12-*13.

Contrary to defendant's assertion, a showing of likelihood of confusion does not require the ABA to prove confusion on the part of numerous ordinary consumers. (Def.'s Mem. At 13.) Rather, the ABA has the burden of proving that "numerous ordinary consumers *are likely to be misled or confused* as to the source of the product [or service] in question . . . ." Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390-91 (2d Cir. 1995) (internal quotation marks omitted). A showing of actual confusion, however, is not required. Web Printing Controls Co. v. Oxy-Dry Corp., 906 F.2d 1202, 1204 (7th Cir. 1990). Rather, a showing of likelihood of confusion is analyzed under the eight-factor test set forth in Polaroid Corp. v. Polaroid Elecs. Corp., 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820, 82 S. Ct. 36, 7 L. Ed. 2d 25 (1961).

The ABA properly has alleged facts sufficient to support a claim of likelihood of confusion. Defendant improperly suggests that (1) confusion on the part of Yale Medical

---

[6] Defendant asserts that the Court should dismiss Count One insofar as it pertains to false advertising on two grounds. First, defendant asserts that: "Plaintiff fails to allege that defendant engaged in advertising or promotion 'disseminated sufficiently to the relevant purchasing public.'" (Memorandum in Support of Defendant's Motion to Dismiss (hereinafter Def.'s Mem.) Part III.D.) Second, defendant asserts that: "Plaintiff fails to allege that plaintiff is a competitor of defendant and that plaintiff suffered a competitive injury." (Def.'s Mem. Part III.E.) These arguments misunderstand the nature of the ABA's claim. The claim being alleged by the ABA is a claim for unfair competition, false advertising and false designation of origin *causing consumer confusion* pursuant to § 1125(a)(1)(A). The cases cited by defendant refer to § 1125(a)(1)(B), making them simply inapplicable to the ABA's Complaint. "The Lanham Act . . . is aimed broadly at "unfair competition." . . . It extends from 'passing-off' cases *to all types of false advertising.* Constr. Tech., Inc. v. Lockformer Co., 704 F. Supp. 1212, 1220 (S.D.N.Y. 1989) (emphasis added). Thus under the Lanham Act, false comparative advertising is actionable; id.; as is a claim for false endorsement; ETW Corp. v. Jireh Publ'g, 332 F.3d 915, 924-26 (6th Cir. 2003) (analyzing a claim for false advertising in the nature of a claim for false endorsement under the likelihood of confusion standard). Moreover, a claim for false advertising causing a likelihood of confusion – such as the claim asserted by this plaintiff – is actionable. See Schroeder v. Lotito, 577 F. Supp. 708, 720-23 (D.R.I. 1983). Accordingly, defendant's Motion to Dismiss Count One on the grounds asserted in Parts III.E & F of the Memorandum in Support of Defendant's Motion to Dismiss should be denied.

Group and Yale University School of Medicine does not constitute confusion by "consumers", and (2) the ABA has, therefore, not alleged actual consumer confusion. Defendant is wrong on both counts.

Yale Medical Group and Yale University School of Medicine are consumers. Defendant asserts that the infringing letter "solely" was distributed to defendant's employer, and that "Plaintiff's Complaint alleges no facts that any consumers were ever told of or even aware of [the defendant's] alleged misrepresentations." (Def.'s Mem. at 14.) Defendant's argument that numerous ordinary consumers could not be confused because no ordinary consumer was presented with the infringing letter misses the point. Defendant has taken an improperly narrow view of who the consumers are in the present case. The ABA's Complaint alleges that Yale Medical Group and Yale University School of Medicine were both given the letter containing the infringing mark. Both of those entities are "consumers." The certification mark at issue in this case is, in part, meant to indicate to anyone who is interested that a doctor has fulfilled the ABA's rigorous requirements for certification. Those interested parties are consumers of the mark. Interested parties would, as defendant seems to assert, clearly also include patients. If, however, patients are consumers, <u>a fortiori</u>, hospitals and medical schools are as well. What entities would be more interested in the certification status of a doctor than the practice hiring that doctor to treat patients and the medical school hiring that doctor to teach future doctors? Moreover, it should be left for discovery what representations the Yale Medical Group or Yale University School of Medicine may have made to patients based on the misrepresentations that they received from defendant, or in what other ways defendants may have misrepresented his subspecialty certification to as yet unknown others.

-13-

The ABA need not plead actual confusion in order to state a claim upon which relief can be granted under the Lanham Act. Defendant's claim that the ABA has not alleged facts sufficient to prove actual confusion therefore is irrelevant. The ABA *has* alleged actual confusion on the part of Yale Medical Group and Yale University School of Medicine – consumers of the certification mark. Even under defendant's misstated standard, the ABA has alleged sufficient facts. Accordingly, defendant's Motion to Dismiss Count One should be denied.

### D. The ABA Alleges Facts Sufficient to Support a Claim for Dilution.

Count Two properly alleges facts sufficient to support a claim for trademark dilution in violation of 15 U.S.C. § 1125(c). In order to make out a prima facie case of trademark dilution, the ABA must allege that: "(1) it possesses a famous trademark; and (2) Defendant has caused dilution of the distinctive quality of the trademark." Caterpillar, Inc. v. Walt Disney Co., No. 03-1334, 2003 U.S. Dist. LEXIS 18618, at *20 (C.D. Ill. Oct. 20, 2003). The cases on which defendant relies in claiming that the ABA has failed to state a claim upon which relief can be granted do not indicate otherwise. Defendant, taking language out of context from Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 832-33 (8th Cir. 1999), seems to assert that the ABA must demonstrate that "a significant segment of the target group of customers" are associating the ABA's mark with defendant.[7] (Def.'s Mem. at 16.) This is a misstatement. The Luigino's court, in assessing how similar the marks must be in order to support an action for dilution by blurring, stated that the marks must be "similar enough that a significant segment of the target group of customers sees the two marks as essentially the

---

[7] It should be noted that the ABA did, in fact, allege actual consumer confusion. See Part III.C of this Memorandum.

-14-

same." Id. The court thus was providing litigants with a gauge of how similar the marks must be, not setting forth a third requirement for proving dilution.

Defendant further claims that the ABA has failed to allege facts sufficient to prove actual dilution. (Def.'s Mem. at 15-16.) This argument is refuted by the explicit allegations of the ABA's complaint. The ABA has alleged that defendant copied the ABA's mark. The Supreme Court, in Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 434, 123 S. Ct. 1115, 155 L. Ed. 2d 1 (2003), stated that "[i]t may well be . . . that direct evidence of dilution . . . will not be necessary if actual dilution can reliably be proven through circumstantial evidence – the obvious case is one where the junior and senior marks are identical." Because the ABA has alleged that defendant copied the its mark – and that the infringing mark was identical to the ABA's mark – the ABA has plead facts sufficient to support a claim for dilution as that claim has been articulated by the United States Supreme Court. The facts alleged by the ABA in Count Two are thus sufficient to "show[] that the [plaintiff] is entitled to relief . . . and . . . give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Waring v. Carrier Corp., No. 301CV1822(JBA), 2002 U.S. Dist. LEXIS 17650, at *8-*9 (D. Conn. Aug. 21, 2002) (citations omitted) (internal quotation marks omitted). Accordingly, defendant's Motion to Dismiss Count Two should be denied.

### E.   The ABA Has Pleaded Fraud With Sufficient Particularity.

Counts One and Two properly allege facts with the requisite degree of particularity to support the ABA's claims sounding in fraud. "In general, a complaint need only include a 'short and plain statement of the claim.' . . . Fraud claims are, however, an exception to this

rule. Rule 9(b) requires that the circumstances constituting fraud must be pleaded with particularity. . . . This means that the plaintiff must state in his complaint 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated. . . . In deciding whether a complaint has met the requirements of Rule 9(b), the court must keep the purposes of the rule in mind: 1) to inform the defendants of the nature of the claimed wrong and enable them to formulate an effective response and defense; 2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and 3) to protect defendants from unfounded charges of fraud which may injure their reputations." Energy Servs. Air Conditioning & Heating Co. v. Nicor, Inc., No. 97C373, 1997 U.S. Dist. LEXIS 20660, at *28-*29 (N.D. Ill. Dec. 22, 1997).

The ABA has pleaded facts with a sufficient degree of particularity. The ABA has identified the person making the misrepresentation (Complaint at ¶ 27); the time frame within which the misrepresentation was made (id. at ¶¶ 27-28); the place and content of the misrepresentation (id.); and the method by which it was communicated (id.). The fact that the ABA has not identified the exact date on which defendant tendered the counterfeit letter to Yale Medical Group and the Yale University Medical School is not fatal to the ABA's claim. The ABA has alleged a time frame in which the tender would have taken place. Moreover, the ABA appended a copy of the letter to its Complaint. Therefore, the allegations of fraud in the ABA's Complaint are "sufficiently particularized to provide fair notice and . . . the defendant would be able to respond adequately." Id. at *30. Accordingly, defendant's Motion to Dismiss the claims in the ABA's Complaint sounding in fraud should be denied.

## IV.  CONCLUSION

For all of the foregoing reasons, defendant's Motion to Dismiss should be denied in its entirety.

> PLAINTIFF,
> THE AMERICAN BOARD OF
> ANESTHESIOLOGY, INC.,
>
> By /s/ Karen T. Staib
>   Charles L. Howard
>   Federal Bar No. ct05366
>   Karen T. Staib
>   Federal Bar No. ct21119
>   For Shipman & Goodwin LLP
>   One American Row
>   Hartford, CT 06103-2819
>   Telephone: (860) 251-5000
>   Facsimile:  (860) 251-5600
>   E-mail: choward@goodwin.com
>   E-mail: kstaib@goodwin.com
>   Its Attorneys

## CERTIFICATION OF SERVICE

This is to certify that on this 15th day of December, 2003, a copy of the foregoing Memorandum of Law was mailed, via first class U.S. mail, postage prepaid, to:

Carolyn W. Kone, Esq.
Brenner, Saltzman & Wallman
217 Whitney Avenue
P.O. Box 1746
New Haven, CT 06507-1746

_____
Karen T. Staib

359781 v.01